**In re COLUMBIA TOBACCO CO., Inc.**

**No. 38047.**

District Court, E. D. New York.

March 13, 1941.

William Walzer, of New York City, for trustee.

Harry Malter, of New York City, pro se, and for Goldman, Malter & Goldman, claimants.

Theodore Stitt, of Brooklyn, N. Y., referee.

GALSTON, District Judge.

On November 14, 1939, the Columbia Tobacco Company, against which company a petition in bankruptcy was filed on November 20, 1939, executed an assignment of its claims and accounts to the law firm of Goldman, Malter & Goldman, to secure to that firm the payment of the sum of $2,500 "for services rendered and to be rendered by the said assignee for and on behalf of the assignor in connection with its financial difficulties, and such additional sums as might represent the reasonable value of the services to be rendered by the said assignee beyond services of the reasonable value of $2500". This assignment was executed by the president and treasurer of the corporation but was not acknowledged, nor was there attached to it the schedule of accounts referred to in the body of the instrument.

During the week that preceded the bankruptcy, they received amounts owing to the bankrupt, which amounts had been collected by salesmen employed by the bankrupt, so on December 5, 1939, the claimants wrote to the receiver that they had collected the sum of $2,403.69, out of which they had expended, under instructions of the bankrupt, the sum of $125 for services of an accountant. Thereafter the trustee in bankruptcy moved before the referee for an order directing the claimants to turn over the sums of money which had been collected by them under the aforesaid assignment. An answer having been filed to this petition the trustee and the attorneys entered into a stipulation whereby the attorneys agreed to turn over to the trustee $2,360.73, "without prejudice to the cause of either the trustee or the said Goldman, Malter & Goldman".

The issue was heard before the referee and he disallowed the claim and lien asserted by Goldman, Malter & Goldman for services alleged to have been rendered as attorneys for the bankrupt. The attorneys seek a review of that order.

Isidor J. Rosenblum and Morris Grossman were the principal stockholders of the corporation and controlled its affairs. They consulted Martin M. Goldman of the law firm on November 13, 1939, in an effort to effect settlement with creditors. Goldman testified that he worked on the matter from that day until the filing of the petition in involuntary bankruptcy on November 20th, expending time and effort, but without success. Goldman, during that week, sought the employment of an accountant to enable him to ascertain the actual financial status of the company. Apparently he did negotiate with at least some creditors and with the stockholders. The recital of services thus rendered is without much detail.

On November 21, 1939, the day after the petition in bankruptcy had been filed, the attorneys wrote the president of the corporation that if proceedings were taken to effect a settlement with creditors through an arrangement, they would represent the corporation for that purpose; but if no settlement were made, and the estate were administered in bankruptcy and its assets liquidated, they would not represent the corporation any further. The letter concluded with their expressed intention to represent Grossman in the bankruptcy proceedings and that they would not be able to represent Rosenblum. It seems undisputed that thereafter the corporation appeared in the bankruptcy proceedings through other counsel.

There are two primary questions presented. The first is whether the referee was correct in determining that the attorneys had no lien on the funds collected and which are now held by the trustee under the stipulation.

The trustee contends that the attorneys abandoned their retainer by service of written notice withdrawing from representation of the bankrupt. The assignment of accounts was made to the bankrupt as security for services rendered and to be rendered in connection "with its financial difficulties". What meaning is to be given to that language? The term "financial difficulties" is a broad term and a reasonable interpretation would seem to cover proceedings in bankruptcy instituted by creditors of the bankrupt. Nevertheless, after one week's service in endeavoring to understand the affairs of the bankrupt and after conducting some preliminary negotiation with respect thereto, the attorneys withdrew from such representation. The law of New York holds that the creation and maintenance of a common-law lien of an attorney arising out of the relationship between attorney and client is terminated by the abandonment or withdrawal from the retainer by an attorney without cause. Holmes et al. v. Evans, 129 N.Y. 140, 29 N.E. 233; Matter of H———, 93 N.Y. 381.

The attorneys urge, however, a statutory lien under Sec. 60, sub. d, of the Bankruptcy Act, 11 U.S.C.A. § 96, sub. d. That section provides in substance that if, in contemplation of bankruptcy, a debtor shall, directly or indirectly, pay money or transfer property to an attorney for services to be rendered, the court shall, upon petition of the trustee or any creditor, re-examine the transaction. Such payment or transfer shall be valid only to the extent of a reasonable amount, and the excess shall be recoverable by the trustee.

The difficulty with the position is that no payment to the attorneys had in fact been made, and so much would appear from the language of the petition to review. The applicability of Sec. 60, sub. d, is therefore not apparent. However, if the assignment of accounts may be considered "payment", under this section, it must have been in contemplation of bankruptcy. So considered the services were not performed for the attorneys withdrew as soon as the involuntary petition was filed and they therefore are entitled to no lien thereunder.

Nevertheless, though the attorneys have no common-law lien, nor a lien under the aforesaid section of the Bankruptcy Act, they would be entitled to file a claim for the reasonable value of their services during the period from November 13, 1939, to November 20, 1939. The referee found that the services were not beneficial to the bankrupt, but frequently an attorney, in the honest effort to render an advantageous service, fails in his objective. That should not bar an attorney from compensation. I think these attorneys, therefore, are entitled to some compensation as general creditors, but

what the amount should be I cannot determine from the record before me.

The referee's order in disallowing the lien is affirmed; but in rejecting the claim in its entirety the order should be modified to the extent of enabling the attorneys to assert their claim as general creditors, and the proceedings are therefore respectfully referred to the referee for further determination.

Settle order on notice.